UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MOHAMMED VIKARUDDIN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No: 04 C 2872 |
| BANK ONE, N.A., | ) | Judge John W. Darrah |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mohammed Vikaruddin, filed suit against Defendant, Bank One, N.A., alleging that Defendant: (1) discriminated Plaintiff on account of his national origin, India, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1); (2) discriminated Plaintiff on account of his religion, Muslim, in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1); (3) retaliated against Plaintiff for bringing a charge with the Equal Employment Opportunity Commission ("EEOC"); and (4) breached an "implied employment contract." Presently before the Court is Defendant's Motion for Summary Judgment. For the following reasons, the motion is granted.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the

court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

Plaintiff failed to respond to Defendant's Rule 56.1(a) Statement of Facts. Plaintiff's failure to comply with Rule 56.1(b) results in accepting as true all facts set out in a Rule 56.1(a) statement. *See Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). Even though Plaintiff failed to respond to Defendant's statement of material facts and such facts are deemed admitted, Defendant's Motion for Summary Judgment will only be granted if it can demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law.

2

*See Johnson v. Gudmundson*, 35 F.3d 1104, 1112 (7th Cir. 1994). Accordingly, the undisputed facts, for the purposes of this motion, taken from Defendant's Local Rule 56.1(a) statement of material facts (referred to herein as "Def.'s 56.1") and exhibits, are as follows.

Plaintiff worked as a software application developer in Defendant's Asset-Based Finance ("ABF") department. Def.'s 56.1 ¶ 6. The only document that created a contract between Plaintiff and Defendant was Plaintiff's offer letter. Def.'s 56.1 ¶ 63. The offer letter stated that "[e]mployment by Bank One Corporation is on an 'at will' basis. This means that the employment relationship may be discounted at any time without notice by either you or Bank One Corporation." Def.'s 56.1 ¶ 64.

Plaintiff's work consisted primarily of designing and programming technology solutions for computer systems. Def.'s 56.1 ¶ 7. Many of Plaintiff's assignments and responsibilities involved a programming language known as "SQL." Def.'s 56.1 ¶ 8. Another language used by Plaintiff's group was called ".NET." Def.'s 56.1 ¶ 8.

Plaintiff's first manager was Randy Rycraft, who stated in Plaintiff's 2000 performance review that Plaintiff "[h]as not been aggressive in acquiring the business knowledge required" and that Plaintiff's "[d]evelopment time is much slower than expected for a senior developer." Def.'s 56.1 ¶¶ 10-12. Rycraft's 2001 performance review concluded that Plaintiff needed a "[b]etter understanding" of the ABF business and that Plaintiff needed to produce "faster" results. Def.'s 56.1 ¶ 13. Rycraft did not discriminate against Plaintiff. Def.'s 56.1 ¶ 14.

Thereafter, Reiko Yamada became Plaintiff's manager. Def.'s 56.1 ¶¶ 15-16. In order to spend the group's 2002 training budget before the year ended, Yamada asked her group members to take a training class. Def.'s 56.1 ¶ 18. Plaintiff did not take a class because he took time off

3

to attend to his daughter, who was battling cancer. Def.'s 56.1 ¶ 19. In 2003, Plaintiff asked to take additional .NET training, but Yamada wanted Plaintiff to begin additional on-the-job training in .NET before taking a class. Def.'s 56.1 ¶¶ 20-21.

Before Plaintiff received his 2002 performance evaluation, Yamada asked Plaintiff why he kept a beard, where he was from, and what religion he practiced. Def.'s 56.1 ¶ 29. Other than these isolated questions, neither Yamada nor anyone else working for Defendant made any negative comments about Plaintiff's national origin or religion. Def.'s 56.1 ¶ 30.

In the 2002 evaluation, Yamada rated Plaintiff as "N," for needs improvement, the lowest level under Defendant's rating structure. Def.'s 56.1 ¶ 23. Specifically, Yamada found that Plaintiff needed to: (1) "further develop his knowledge about the ABF business"; (2) be more efficient with his time and to produce more results than finishing only one project on a single software release; (3) demonstrate better knowledge about the database his group supported; and (4) find solutions independently, without relying on Yamada for suggestions. Def.'s 56.1 ¶ 24.

Lisa Eber subsequently became Plaintiff's manager. Def.'s 56.1 ¶ 32. Shortly thereafter, Eber learned that Plaintiff received an "N" rating for 2002. Def.'s 56.1 ¶ 37. Eber instructed Yamada to develop a coaching and mentoring strategy involving weekly objectives to help improve Plaintiff's rating. Def.'s 56.1 ¶ 37. The coaching continued for a number of months and included one-on-one sessions with Plaintiff and Eber and/or Yamada. Def.'s 56.1 ¶ 39.

Plaintiff also complained to Eber about wanting to attend more .NET training. Def.'s 56.1 ¶ 40. Eber told Plaintiff that he needed to show sustained improvement on his current SQL assignments before she could approve more .NET training; in Eber's view, it did not make sense to have Plaintiff learn a new technology when his performance in SQL – the foundational

programming language for .NET – was unsatisfactory. Def.'s 56.1 ¶ 41. Eber explained to Plaintiff that he demonstrated insufficient knowledge about the ABF department's business and database. Def.'s 56.1 ¶¶ 42-44. Understanding the business and database were critical because a developer cannot write programs for the database without a detailed understanding of the database's business purposes. Def.'s 56.1 ¶ 44. Eber also explained that given Plaintiff's experience, he needed to improve his ability to troubleshoot software and data problems without assistance. Def.'s 56.1 ¶ 45.

Eber and Yamada conducted a 2003 mid-year performance review of the group's members. Def.'s 56.1 ¶ 48. In Plaintiff's written review, Eber noted that Plaintiff needed a better understanding of the database and the ABF business. Def.'s 56.1 ¶ 48. In a meeting, Eber stressed that Plaintiff needed to improve his ability to independently troubleshoot problems in the program. Def.'s 56.1 ¶ 49.

Eber requested laptop computers for her group members. Def.'s 56.1 ¶ 50. Initially, because not enough computers were approved to provide a laptop for each member, Eber only provided laptops to the developers working on the most important projects. Def.'s 56.1 ¶ 50. Plaintiff did not receive a laptop until six to eight weeks later, after Eber received approval for enough laptops for each group member. Def.'s 56.1 ¶ 50.

During the coaching period, Plaintiff performed well on some assignments but failed to demonstrate significant and sustained performance in his ability to troubleshoot problems efficiently and independently. Def.'s 56.1 ¶ 51. He continued to suffer from a lack of understanding the database, which prevented Plaintiff from completing his tasks timely and efficiently. Def.'s 56.1 ¶ 51. Eber documented these deficiencies and presented a written

5

performance warning to Plaintiff in the fall of 2003. Def.'s 56.1 ¶ 52. Plaintiff understood that warning meant his employment might be terminated. Def.'s 56.1 ¶ 53. Eber and Yamada continued to counsel and coach Plaintiff on how to correct these deficiencies by: (1) providing Plaintiff with strategies to help him develop better troubleshooting skills, (2) reviewing Plaintiff's programming and providing feedback, (3) giving hands-on training with Plaintiff's assigned work, and (4) explaining ways to better understand the database. Def.'s 56.1 ¶¶ 54, 56.

On October 16, 2003, Plaintiff filed a Charge of Discrimination with the EEOC. Def.'s 56.1 ¶ 57. According to the charge, Plaintiff believed that he had been treated differently because of his national origin and religion and that his managers: (1) denied Plaintiff training, (2) gave Plaintiff unfounded negative criticisms and reviews, (3) did not give Plaintiff a laptop computer, and (4) gave Plaintiff the written performance warning. Def.'s 56.1 ¶ 57.

Thereafter, Plaintiff was given his 2003 performance review, which stated Plaintiff continued to: (1) lack the requisite knowledge of the database, (2) make unacceptable errors, (3) demonstrate a lack of attention to programming, and (4) fail to troubleshoot problems effectively. Eber rated Plaintiff as "N." Def.'s 56.1 ¶ 58.

In March 2004, Eber recommended Plaintiff's termination, which was approved. Def.'s 56.1 ¶ 59. The termination was recommended because of Plaintiff's continued unsatisfactory performance while Eber was managing Plaintiff. Def.'s 56.1 ¶ 60. Eber also reviewed the 2002 performance review. Def.'s 56.1 ¶ 60. To support the recommendation, Eber wrote a memorandum to human resources stating that Plaintiff failed to improve in critical areas such as: (1) understanding the ABF business and database and (2) independently and effectively programming and troubleshooting his assigned tasks. Def.'s 56.1 ¶ 62.

## ANALYSIS

Defendant seeks summary judgment on Plaintiff's Title VII discrimination claims, Plaintiff's Title VII retaliation claim, and Plaintiff's breach of contract claim.

To establish unlawful discrimination, Plaintiff must demonstrate that he was discriminated against because of his national origin or religion. 42 U.S.C. § 2000e-2(a). Plaintiff may defeat the motion for summary judgment by using either the "direct" method or the "indirect" method. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998) (*Pafford*).

Under the direct method, Plaintiff may demonstrate that a genuine issue of material fact exists as to whether he suffered an adverse employment action motivated by an impermissible purpose by presenting either circumstantial or direct evidence. *Pafford*, 148 F.3d at 665. Circumstantial evidence consists of "(1) suspicious timing, ambiguous statements, behavior towards other employees and so on . . . ." *Volovsek v. Wisconsin Dep't of Agric., Trade, and Consumer Prot.*, 344 F.3d 680, 689 (7th Cir. 2003) (*Volovsek*). The evidence must create a convincing mosaic of discrimination to avoid summary judgment. *Volovsek*, 344 F.3d at 690. It is undisputed that Plaintiff never heard Defendant's employees making disparaging comments or remarks about his religion or national origin. Yamada asked Plaintiff about his ethnic background and religion on one occasion; however, these isolated questions, by themselves, do not create the convincing mosaic of retaliation needed to avoid summary judgment under the direct method.

Under the indirect method, Plaintiff "may raise an inference of discrimination by offering sufficient evidence to establish a *prima facie* case." *Pafford*, 148 F.3d at 665. To raise a *prima facie* case, Plaintiff must produce evidence that: (1) he was a member of a protected class; (2) he

7

was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) similarly-situated employees not in the protected class were treated more favorably. *Lalvani v. Cook County*, 269 F.3d 785, 789 (7th Cir. 2001). If Plaintiff demonstrates a *prima facie* case, the burden shifts to Defendant to demonstrate "a legitimate, nondiscriminatory reason for the action." *Pafford*, 148 F.3d at 665. If Defendant meets this burden, the burden shifts back to Plaintiff to demonstrate the proffered reason is pretextual. *Pafford*, 148 F.3d at 665.

Plaintiff raises seven types of adverse employment actions: (1) Defendant's decision not to allow Plaintiff to participate in interview sessions for prospective employees, (2) Defendant did not consider ideas raised by Plaintiff, (3) the denial of training, (3) the denial of a laptop, (5) inaccurate or otherwise negative performance evaluations, (6) the written performance warning, and (7) his termination. However, only tangible employment actions are actionable; those actions require "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 743-44 (7th Cir. 2002) (citations omitted). Accordingly, no genuine issue of material fact exists as to whether Plaintiff suffered a tangible employment action when: (1) Defendant decided not to allow Plaintiff to participate in interview sessions for prospective employees and (2) Defendant did not consider ideas raised by Plaintiff.

As to the remaining employment actions, even if Plaintiff could make a *prima facie* case of discrimination, Plaintiff cannot demonstrate that Defendant's reasons for taking action were pretextual. To establish pretext, Plaintiff must raise a genuine issue of material fact demonstrating that Defendant's proffered reasons for taking action were not honest. *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000).

(3) Plaintiff alleges that Defendant denied him training, even though Plaintiff was offered the opportunity to take a class in 2002. Plaintiff wanted to take a .NET class, but it is undisputed that Plaintiff's managers would not permit Plaintiff to take this class until: (a) Plaintiff improved at programming in SQL, the foundational language for .NET and (b) Plaintiff received more on-the-job training in .NET. Plaintiff has presented no affidavits, depositions, interrogatories, or admissions to the contrary.

(4) Plaintiff next alleges that he was denied a laptop. However, it is undisputed that Plaintiff eventually received a laptop. It is also undisputed that Plaintiff's manager decided to provide laptops to the developers working on the most important projects. Plaintiff has presented no affidavits, depositions, interrogatories, or admissions to the contrary.

(5) Plaintiff contends that his evaluations were inaccurate and unfairly negative, as they were based upon the subjective opinions of his managers instead of objective yardsticks. However, "nothing in Title VII bans the outright use of subjective evaluation criteria." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1176 (7th Cir. 2002) (citation omitted).

(6) Plaintiff also contends that he was discriminated against when he received his written performance warning. As discussed above, Plaintiff's job performance was deficient in numerous ways, including: (a) a lack of knowledge of the ABF business, (b) a failure to

9

understand the database that was used by his group, (c) a failure to produce results efficiently, (d) a failure to work independently, and (e) an inability to troubleshoot problems. Despite coaching and mentoring, three separate managers concluded that Plaintiff suffered from these job deficiencies. Plaintiff has not presented any affidavits, depositions, interrogatories, or admissions raising a genuine issue of material fact which demonstrates the reasons for the written performance warning were pretextual.

(7) Plaintiff further contends his termination was pretextual. However, it is undisputed that after the written performance warning – which Plaintiff knew could lead to his termination – Plaintiff's performance continued to be unsatisfactory, despite continued counseling and teaching from Eber and Yamada. Accordingly, no genuine issue of material fact exists demonstrating that Plaintiff's termination was pretextual.

Based on the above, Defendant is entitled to summary judgment on Plaintiff's discrimination claims.

Title VII also prevents employers from retaliating against employees because "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff can defeat a motion for summary judgment in this regard by using either the direct method or by using the indirect, burden-shifting method discussed above. *Fyfe v. City of Fort Wayne*, 241 F.3d 597, 601 (7th Cir. 2001) (*Fyfe*). Under the indirect method, an employer is entitled to summary judgment if it presents an unrebutted, legitimate, nondiscriminatory reason for the adverse employment action. *Fyfe*, 241 F.3d at 601.

Plaintiff has not presented any affidavits, depositions, interrogatories, or admissions containing any direct or circumstantial evidence that any adverse employment actions he suffered were retaliatory. As such, Plaintiff can only rely upon the indirect, burden-shifting method. Plaintiff, though, relies upon the same set of claimed adverse employment actions to support his retaliation and discrimination charges. Therefore, Defendant is also entitled to summary judgment on Plaintiff's retaliation claims.

Finally, Plaintiff alleges Defendant breached an "implied contract" when Plaintiff was terminated. However, it is undisputed that the only purported written contract which exists is Plaintiff's employment offer letter. It is also undisputed that this letter states Plaintiff's employment is at will. Plaintiff has presented no affidavits, depositions, interrogatories, or admissions to the contrary. Accordingly, Defendant is entitled to summary judgment on Plaintiff's breach of contract claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Dated: August 26, 2005

JOHN W. DARRAH
United States District Judge

11